# SHAREMAN, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

### St. Louis Court of Appeals, December 15, 1903.

1. **CARRIER OF PASSENGERS: Damages: Pleading: Indefinite Petition.** In an action for damages sustained by reason of the injuries to plaintiff's wife, received while she was alighting from one of defendant's trolley cars, a petition which avers that the car stopped, or slowed down until its motion was imperceptible to plaintiff's wife, and that when she was in the act of stepping off, at the invitation of the defendant, the motion of the car threw her and caused the injuries complained of, states a cause of action. However, such pleading is to be condemned, because it leaves one in doubt whether the pleader intended to count on a fall due to the starting of the car before the passenger could alight, or a fall due to the failure to stop; a motion to make the petition more definite and certain would have been proper.

2. ————: ————: ————: **Variance.** Where the proof in such case shows that the car had stopped and plaintiff's wife was injured by its starting before she could alight, there is no variance, because the averments cover that contingency, there being no affidavit of surprise in order to take advantage of the supposed variance.

3. ————: ————: **Instructions: Inconsistent and Mistaken Theories: Injuries While Getting Off Car.** In an action for damages sustained by plaintiff by reason of injuries to his wife, sustained while alighting from defendant's car, an instruction which told the jury that it was the conductor's duty, under an ordinance providing that conductors should not allow ladies and children to leave cars while in motion, to exercise ordinary care to prevent the car from being in motion while plaintiff's wife was alighting therefrom, and an instruction which required the conductor to exercise high care to prevent her from leaving the car while it was in motion, are in conflict as to the degree of care required of the conductor; and, where the only theory on which the plaintiff can recover, under the facts, is that the car stopped and, while she was getting off, the car was suddenly and carelessly started, whereby she was thrown

down and injured, such instructions submit a mistaken theory of the law.

4. ———: ———: ———: **Last Chance Rule.** On the other hand, if, as claimed by defendant, the car had stopped long enough for all passengers to alight, and had started again, and plaintiff's wife suddenly arose from her seat and stepped off, without ringing for a stop and was thrown down, but not by a sudden increase of speed, she alone is to blame for the accident; under either theory there is no call for an application of the last chance rule.

5. ———: **Contributory Negligence: Injuries to Passenger Alighting: Municipal Ordinance.** A city ordinance which provides that "conductors shall not allow ladies and children to enter or leave cars while in motion" can not abrogate the rule of law that when the negligence of a party, proximately and directly, causes or contributes toward injury to him, he has no just claim for damages from another whose negligence played some part therein.

Appeal from St. Louis City Circuit Court.—*Hon. Franklin Ferriss*, Judge.

REVERSED AND REMANDED.

*Boyle, Priest & Lehmann*, and *Crawley, Jamison & Collet* for appellant.

(1) The only cause of action attempted to be pleaded in the petition is the supposed negligence of defendant in allowing plaintiff's wife to alight from a moving car after its motion had become so reduced as, to be imperceptible; coupled with the declaration that in so permitting the lady to alight defendant violated an ordinance of the city forbidding conductors to allow women and children to leave street cars while the same are in motion. In his opening statement to the jury counsel for plaintiff declared the fact to be that the car was at a standstill when the lady undertook to alight, and that "while the lady was there on the step in the act of stepping off, the car started and threw her." This statement of counsel that the accident was due to the

sudden starting of a stationary car, is not merely irre-concilable with, but flatly contradictory of, the allega-tion of the petition that defendant's negligence consisted of permitting the lady to alight from a car already in motion. In other words plaintiff's counsel stated himself out of court. The jury being sworn to try the issues made by the pleadings, a solemn admission by counsel in open court that the accident was not caused by the negligence alleged in his petition, entitled defendant to judgment on motion as soon as the statement was made, without unnecessarily consuming time in hearing confirmatory proof of said admission. Oscanyan v. Arms Co., 103 U. S. 261; Butler v. National Home, 144 U. S. 65; Pratt v. Conway, 148 Mo. 299. (2) The trial court erred in overruling the defendant's objections to the introduc-tion of any evidence under the petition, both as it read originally, and as it read after it had been so amended as to allege that the motion of the car at the time plain-tiff's wife undertook to alight was imperceptible "to her." The petition utterly fails to state facts sufficient to constitute a cause of action, expressly or by implica-tion. Saxton v. Railway, 72 S. W. Rep. 717, and cases cited; Bartley v. Railway, 148 Mo. 124. (3) The instruc-tion asked by defendant at the close of plaintiff's evi-dence in the nature of a demurrer to said evidence should have been given, as also should the peremptory instruc-tion asked at the close of all the evidence in the case. The cause of action attempted to be pleaded in the peti-tion being the supposed negligence of defendant's ser-vants in permitting plaintiff's wife to alight from a moving car, proof of that specific charge, as to which there is not a syllable of evidence, was essential to plain-tiff's recovery. Jacquin v. Railway, 57 Mo. App. 320; Pryor v. Railway, 85 Mo. App. 367; Chitty v. Railway, 148 Mo. 64; McManamee v. Railway, 135 Mo. 440; Hite v. Railway, 130 Mo. 132; Schneider v. Railway, 75 Mo. 295; Buffington v. Railway, 64 Mo. 246.

### STATEMENT.

While alighting from one of appellant's trolley cars Hermina Shareman fell on the paved street and was hurt. That accident is the foundation of this lawsuit, in which the plaintiff, as the husband of said Hermina Shareman, seeks to recover damages sustained by reason of the loss of his wife's services and society on account of the injuries she received and the expense of her medical treatment. According to the petition the wife boarded a car west of Grand avenue in St. Louis, intending to get off at the intersection of Broadway and Washington avenue. Instead of stopping at the east crossing of those streets, it is averred the car passed on and stopped or slowed down for her to alight at a point east of the crossing. The petition then proceeds:

"That she, in obedience to said invitation, whilst said car was stopped or slowed down so that its motion was imperceptible, was proceeding to alight from said car when she was caused to be thrown from said car by its motion whilst she was in the act of stepping therefrom, and was thereby greatly and permanently injured upon her head, chest, body and spine, and she also sustained a great and permanent shock to her nervous system and was injured internally and the bone of her forehead was crushed and her sight injured. And the plaintiff avers that the defendant's servants in charge of said car were negligent in causing and suffering said car to be so in motion whilst his wife was so alighting from said car, which negligence directly contributed to cause said injuries to his said wife. And for another and further assignment of negligence, the plaintiff avers that at the time of his wife's said injuries, there was in force within the city of St. Louis an ordinance of said city by which it was provided that conductors of street cars should not permit women and children to leave street cars whilst the same were in motion; yet the plaintiff avers that the conductor of said car was present at

the time his wife was about to leave said car, and invited her to leave said car, and permitted her to do so whilst said car was in motion, which violation of said ordinance directly contributed to cause said injuries to his wife.''

In an opening statement to the jury plaintiff's counsel said:

''The evidence will be that she was a passenger on the car; that the car ran past its destination at Broadway and Washington avenue and stopped about the east side of Nugent's, the building in which Nugent's place is. And it will also probably appear that they had a post there, and that that was one of their usual places to stop to discharge east-bound passengers from that car. Now, the evidence will show this, if we are precluded from introducing the wife; the evidence will show that the car did stop at this post; that while the car was stopped at that post the lady got up in her seat and started to get off the car. The car was one of that description in which there is both a side entrance and a rear entrance. She was leaving the car, as the evidence will be, by the side entrance. A gentleman who saw it and picked her up (rescued her from her position of peril and injury) was standing within a few feet of where this accident occurred and saw it. The accident occurred about 9 o'clock at night. By him we will prove that the car stopped; that he saw the lady on the step; that he saw the conductor at or near her side; that while the lady was there on the step in the act of stepping off, that the car started and threw her; that he went to her rescue.''

Only one witness introduced by plaintiff testified concerning the facts of the accident. He swore that when the car stopped at the place where cars usually stop, Mrs. Shareman started to alight; that she got as far as the lower step of the car, it started and she fell on the street; that she attempted to alight from the middle

exit and the conductor was standing near the steps; that the starting of the car threw her.

Over the objection of the defendant, plaintiff read and put in evidence this ordinance of the city of St. Louis:

"Conductors shall not allow ladies or children to enter or leave cars while in motion."

Several witnesses for the defendant swore the car stopped at the stopping-post long enough for all passengers to get off who desired to do so, then started; whereupon Mrs. Shareman arose from her seat, walked to the middle exit of the car, down the steps and attempted to alight while the car was moving, and before she could be checked; though the conductor tried to check her and called to her to wait until the car stopped, at the same time ringing the bell for a stop.

The car was one with an entrance and steps in the center as well as at the ends.

For the plaintiff the court gave the following instructions, besides one in regard to the measure of damages:

"1. If the jury find from the evidence that the car in question stopped east of Broadway for the purpose of allowing passengers to alight, and that while the car was so stopped the plaintiff's wife attempted to alight therefrom, and while she was in the act of alighting the servants of defendant negligently suffered said car to start forward and thereby caused her to fall or be thrown to the ground and injured; or if you find from the evidence that plaintiff's wife was in the act of alighting from the car while it was in motion and that the conductor by a high degree of care might have seen her in such act and might have prevented her from alighting and failed to do so, and that because of his failure to do so she fell or was thrown from the car, and if you find from the evidence that plaintiff's wife was injured by her fall and that plaintiff thereby lost her services and companionship and incurred expense for medicine and

medical attention and nursing, then the plaintiff is entitled to recover.

"2. The court instructs the jury that under the ordinance read in evidence it was the duty of the conductor of defendant's car on which plaintiff's wife was a passenger, to exercise ordinary care to prevent said car from being in motion whilst plaintiff's wife was alighting and such care not to permit her to alight from said car while it was in motion.

"3. There is no evidence in this case to the effect that when plaintiff's wife proceeded to alight from the car it was moving so slowly as to be imperceptible to her."

The defendant asked the following instruction:

"If the jury find from the evidence that defendant's car stopped to let off passengers in front of Nugent's store or place of business on Washington avenue, and then started forward, and that after said car had so started forward and was moving away from said point, plaintiff's wife attempted to alight from said car while it was so moving away and was thereby thrown and injured, then plaintiff can not recover in this action and your verdict will be for the defendant."

The court refused to give it in that form and instead gave it with this modifying paragraph appended:

"Unless you find from the evidence that after she so attempted to alight, the conductor could, by the exercise of a high degree of care, have prevented her from alighting or leaving said car, and failed to do so."

Defendant asked four instructions which the court refused:

"1. The jury are instructed that there is no evidence in this case from which they can find that plaintiff's wife fell or was thrown from defendant's car, while the motion of the car was so slow as to be imperceptible to her and that plaintiff can not recover in this action upon the ground that plaintiff's wife was

injured while attempting to alight from the car while it was so moving. If defendant's car had come to a stop and then started forward and plaintiff's wife thereafter, and while said car was so moving, stepped, or fell from the same and was thereby injured, then plaintiff can not recover in this action and your verdict will be for defendant.

"2.   The jury are instructed that plaintiff can not recover in this action because of any violation by defendant's servants of the ordinance read in evidence, if you find they did so violate said ordinance in permitting plaintiff's wife to alight from a moving car.

"3.   Plaintiff must recover, if at all, in this case upon proof of the following facts, to-wit:   First. That defendant's car had come to a stop and that while said car was so standing still, plaintiff's wife attempted to alight therefrom.   Second.   And, that while she was in the act of alighting, the car started forward and that the movement of the car in so starting forward, threw, or caused plaintiff's wife to fall from said car.   And unless plaintiff has proven these facts by the greater weight of all the credible evidence in the case, your verdict must be for the defendant.

"4.   If the jury find from the evidence that defendant's car came to a stop in front of, or near to Nugent's store and there remained standing a sufficient length of time to permit passengers then and there desiring and offering to alight from said car, to do so and then started forward and that thereafter, and while said car was so moving forward plaintiff's wife arose from her seat and started to leave said car, and that defendant's servants in charge of said car then stopped the same in the shortest time and space possible with the means and appliances then at hand, then plaintiff can not recover in this action and your verdict will be for the defendant."

GOODE, J. (after stating the facts as above).—1.
An objection was made to the introduction of any evi-
dence on the ground that the petition did not state facts
sufficient to constitute a cause of action.   The argument
advanced by appellant's counsel in support of the objec-
tion is that, as the petition alleged the motion of the car
was imperceptible when Mrs. Shareman started to get
off, and alleged that she was thrown or fell from the
car on account of its imperceptible motion, the conduc-
tor, if the motion was imperceptible, could not be aware
of it and, therefore, was not negligent.   When this ob-
jection was preferred plaintiff's counsel asked leave to
amend so that the averment would read "imperceptible
to her;" that is, to plaintiff's wife; and the amendment
was allowed over the defendant's objection.   As will be
seen from the statement of the case given above, this
averment of the imperceptible motion of the car was
abandoned by plaintiff's counsel during the trial.   In
his opening statement to the jury, said counsel informed
them that the evidence would prove the car stopped and
that while Mrs. Shareman was on its steps and in the
act of stepping off, it started and threw her.   This
theory was adopted in the instructions submitted, and at
plaintiff's request one instruction was given which told
the jury there was no evidence in the case that when
plaintiff's wife was proceeding to alight from the car
it was moving, but so slowly that its motion was imper-
ceptible to her.   The court properly permitted the
amendment; which, however, from the course the evi-
dence took, proved to be immaterial.   There were cer-
tainly sufficient facts stated in the petition to let in evi-
dence.   There was an averment that the car *stopped,* or
slowed down until its motion was imperceptible to Mrs.
Shareman, and when she was in the act of stepping off,
its motion threw her and hurt her.   Of course, if the car
stopped still, as the petition alleged, it must have started
again while she was alighting, for its motion to throw
her down; and, as stated, the case was tried for the

plaintiff on that theory alone. The averment was good enough to permit the introduction of evidence to prove the car stopped and then suddenly started. We think, therefore, the petition stated a cause of action, without reference to specifications of negligence based on the city ordinance which forbids conductors to allow women and children to get on or off cars while they are in motion. But such a pleading is to be condemned; and this one would be if it had been attacked by motion for a more definite and specific averment in regard to the movement of the car and the cause of the fall. The averment as it stands leaves one in doubt whether the pleader intended to count on a fall due to the starting of the car from a motionless state while plaintiff's wife was alighting, or one due to the car crew simply reducing speed for her to alight instead of stopping. Defendants in these tort cases are entitled to be clearly apprised by the petition of the negligent acts relied on as a cause of action. Wills v. Railroad, 44 Mo. App. 51; Waldhier v. Railroad, 71 Mo. 519; Current v. Railroad, 86 Id. 62. But this defendant took no step to have the petition made definite.

2. It is contended there was a variance between the petition and the proof in that the petition counts on an accident arising from the plaintiff's wife leaving the car while it was in motion and before it stopped; whereas the proof showed it had stopped and started again as she was stepping off, but before she reached the street. What is said above answers this argument; for the petition pleaded the matter in two ways, though the case was tried exclusively on the assumption that the car had come to a full stop and threw Mrs. Shareman down by starting suddenly as she was getting off. No affidavit of surprise was filed in order to take advantage of the supposed variance and certainly, in view of the statement of the petition that the car had stopped, and the testimony tending to prove that statement, it can not be held there was a total failure of

proof. The flaw we find is not a variance between the pleading and the proof, but an indefinite petition.

3. In our opinion this cause was submitted to the jury on mistaken and inconsistent theories of the law. The second instruction given for the plaintiff laid down the proposition that under the ordinance read in evidence it was the conductor's duty to exercise ordinary care to prevent the car from being in motion while the plaintiff's wife was alighting, and the same degree of care not to permit her to alight while it was in motion; whereas the first instruction given for plaintiff and the appendix attached to one asked by the defendant, required the conductor to exercise high care to prevent her from leaving the car while it was moving and, in effect, charged that unless he did, plaintiff ought to have a verdict. Those two instructions are in conflict as to the care required of the conductor. There is no proof that Mrs. Shareman started to leave the car while it was in slow motion and was thrown off by an acceleration of its speed. The evidence countenances only two theories of the casualty. One arises on the testimony of the plaintiff and is that after the car had stopped and while Mrs. Shareman was in the act of getting off, it was suddenly and carelessly started, she being thereby thrown on the street and hurt. That makes a clear case of liability against the defendant, if she herself was exercising due care; and there was nothing in the testimony of the witnesses to attach fault to her if those were the facts. It was the duty of the carmen not only to stop the car, but to hold it quiet long enough for her to alight safely by using ordinary activity and caution. Strauss v. Railroad, 75 Mo. 185; Hurt v. Railroad, 94 Id. 255.

The other theory of the case arises on the testimony for the defendant. It is that after the car had stopped a sufficient interval for all passengers to alight who desired to do so, and had then started again, plaintiff's wife suddenly arose from her seat, walked to the middle door

of the car, and without ringing for a stop, stepped off and was thrown down; but not by a sudden increase of speed. If she did that, she and nobody else was to blame for the accident. For aught the evidence shows to the contrary, she was a woman of full physical and mental capacity and, therefore, of full legal responsibility. If the defendant's servants owed her high care to prevent injury to her, she owed herself ordinary care to avoid injury. If she deliberately left the car while it was moving fast enough to make the act dangerous, her conduct was negligent and bars recovery. In that event the case differs essentially from one where a passenger is hurried in his exit by the failure of a car either to stop, or stop long enough, at his destination for him to get off safely by reasonable diligence. He is then, in a manner, forced to take a risk and, if hurt, will not be denied redress unless the risk taken is one which a man of common prudence would shun. Kelly v. Railroad, 70 Mo. 602.

This car had already made a customary and reasonable pause to discharge passengers and had started onward, if the testimony for the defendant is true; as, for the purpose of this hypothesis we assume it to be. There was, therefore, no invitation, express or implied, to Mrs. Shareman to alight, nor any constraint on her to do so. If she attempted to alight while the car was moving away from its usual stopping place, the act was purely voluntary and she must abide the consequences.

In Neville v. Railroad, 158 Mo. 293, it was said that if the plaintiff's son was killed while getting off a moving train, without direction or invitation of the defendant railway company, or its servants, plaintiff had no case, as the deceased took the risk incident to such an act.

In Mason v. Railway, 75 Mo. App. 1, which was an action for damages based on the ground that a railway train was not held long enough at a station to permit the plaintiff to alight safely, the plaintiff testified that he

stepped on the station platform while the train was moving. Concerning this testimony, it was said that if he selected the time when and the place where to alight, he would be held to a greater degree of care and to have assumed more of the responsibility of the situation than if the conductor was present and gave him a direction to alight; that having selected his own time, the law will hold him to the exercise of due care in making the choice in view of the environment and other circumstances which induced him to jump from the moving train.

In Jackson v. Railroad, 118 Mo. 199, plaintiff, a woman, had been injured in leaving a street car and sued for damages. Her testimony, like that for the present plaintiff, was that while she was stepping from a still car it was started and threw her off. The testimony for the company was that she stepped from the car while it was moving and after it had left its stopping place. This instruction was given in behalf of the defendant:

"If the plaintiff undertook to alight from the defendant's car while it was moving, then defendant could not have been guilty of any negligence charged and your verdict must be for the defendant."

The negligence charged in the petition was that the car started while she was in the act of getting off. Said instruction was attacked as erroneous, but was approved by the Supreme Court. That case throws much light on the true issues of the present case and should be carefully studied. The instructions given by the trial court were held to embody the only theories which properly arose on the evidence therein, namely; whether the car stopped and was suddenly started while Mrs. Jackson was alighting, or whether she attempted to alight while it was in motion. It will be seen by reading the opinion that the Supreme Court insisted on holding the plaintiff fully accountable for her voluntary acts, instead of attaching blame to the conductor if he failed to intercept her though he could have done so; which the in-

structions submitted by the plaintiff insisted was so far his duty, that the railway company was liable if he neglected to intercept her. Defendant's counsel in the present case contended for doctrines approved in the Jackson case, and submitted instructions which enunciated them; but the trial court refused those instructions.

It is not necessarily a negligent act to leave a moving car; but a qestion of fact arises for the jury as to whether the act was negligent; and if it was and proximately contributed to an injury received by the passenger, he has no case for damages.

The facts shown by the record did not call for an application of the last chance rule; but the court applied it by the clause attached to an instruction requested by the defendant. Said instruction, as requested, was that if the car stopped to let off passengers and started forward, and after it had started and was moving away, plaintiff's wife attempted to alight and was thrown down and injured, he could not recover. That charge was precisely like one approved in the Jackson case, supra. The qualification added by the court, was in effect, that plaintiff could not recover unless the jury found from the evidence the conductor, by the exercise of a high degree of care, could have prevented plaintiff's wife from leaving the car. The last chance rule, so far as we know, has never been held to make a defendant liable unless he could have avoided injuring a negligent plaintiff after he knew, or might have known, the plaintiff was in danger from what he (the defendant) was doing—has never been applied to make a passive defendant liable because he could have prevented a plaintiff, of full capacity, from injuring himself. But this was what the instructions in this case did. Granting that the conductor could have hindered her from getting off (and the evidence to maintain that premise is weak) she herself, by the hypothesis of the requested instruction and by the testimony for the defendant, was a voluntary and active agent in bringing

on the accident until the very instant of her fall. She stepped from the moving car with her eyes open, with every means to know the risk she took, with nothing done by the defendant's servants to distract her attention or mislead her, and with no sudden peril to confuse her. Therefore her own conduct was the proximate and sole cause of the harmful consequence. This case is, as to the point in hand, identical with Weber v. Railroad, 100 Mo. 194, in which the law was declared as we have stated it. Carroll v. Transit Co., 107 Mo. 653 is also apposite, as are secs. 185, 186 and citations in 1 Thompson, Negligence. A person who is as conscious of the danger to which he is exposed as is another person, is at least as much bound to try to shun danger, instead of going forward to meet it, as the other party is to try to avert it; otherwise defendants only are liable for negligent acts. Moore v. Railroad, 75 S. W. 672; Cooley, Torts (2 Ed.), 812.

Whatever force may be allowed to the city ordinance in question, it can not abrogate the rule of law that when the negligence of a party proximately and directly causes or contributes toward causing injury to him, he has no just claim for damages from another individual whose negligence also played some part in the affair. Moore v. Railroad, 75 S. W. (Mo.) 672; Hudson v. Railroad, 101 Mo. 13; Cocoran v. Railroad, 105 Id. 399; Weller v. Railroad, 120 Mo. 635; Duncan v. Railroad, 46 Mo. App. 198. The scope of the last chance doctrine is to be found in the adjudicated precedents, which have already encroached on the doctrine of contributory negligence to the extent of constituting an exception to that doctrine as applied in some cases.

The judgment is reversed and the cause remanded. *Bland, P. J.,* and *Reyburn, J.,* concur.